TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2426
    Facsimile: (213) 894-0142
    E-mail:  Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:21-cv-09819-DSF-AFM |
|---|---|
| Plaintiff, | PLAINTIFF'S NOTICE OF MOTION FOR DEFAULT JUDGMENT AGAINST THE INTERESTS OF DAVID ANTHONY GLENN, AND ALL OTHER POTENTIAL CLAIMANTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAN G. BOYLE |
| v. | |
| 2849.09758934 IN MONERO DIGITAL CURRENCY, 0.12554563 IN BITCOIN DIGITAL CURRENCY AND $56,467.00 IN U.S. CURRENCY, | |
| Defendants. | Hearing Date: June 13, 2022<br>Hearing Time: 1:30 p.m.<br>Location:    Courtroom of the<br>                Hon. Dale S.<br>                Fischer |

      PLEASE TAKE NOTICE that on June 13, 2022, at 1:30 p.m.,

plaintiff United States of America ("government" or "plaintiff") will

present a Motion for the Entry of Default Judgment against the

interests of potential claimant David Anthony Glenn ("Glenn") and all

potential claimants before the Honorable Dale S. Fischer,

1   United States District Court.

2       This motion is brought pursuant to Rule 55(b)(2) of the Federal

3   Rules of Civil Procedure and Rule 55-1 of the Local Rules of Practice

4   for the Central District of California.  The motion is based upon

5   this Notice of Motion and Motion, the accompanying Memorandum of

6   Points and Authorities and Declaration of Dan G. Boyle, other facts

7   appearing in the Court's file, and such further evidence, oral or

8   documentary, as may be presented prior to or at the hearing on this

9   motion.

10   Dated: May 12, 2022              Respectfully submitted,

11                                    TRACY L. WILKISON
                                      United States Attorney
12                                    SCOTT M. GARRINGER
                                      Assistant United States Attorney
13                                    Chief, Criminal Division
                                      JONATHAN GALATZAN
14                                    Assistant United States Attorney
                                      Chief, Asset Forfeiture Section
15

16                                    */s/ Dan G. Boyle*
                                      DAN G. BOYLE
17                                    Assistant United States Attorney

18                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
19

20

21

22

23

24

25

26

27

28

1

<b><u>TABLE OF CONTENTS</u></b>

2  <u>DESCRIPTION</u>                                                  <u>PAGE</u>

3

4  TABLE OF AUTHORITIES...............................................iv

5  MEMORANDUM OF POINTS AND AUTHORITIES................................1

6  I.   THE POTENTIAL CLAIMANT IS IN DEFAULT...........................1

7  II.  ARGUMENT.......................................................4

8       A.   THE STANDARD FOR ENTRY OF JUDGMENT BY DEFAULT............4

9            1.   THE EITEL FACTORS...................................4

10           2.   PROCEDURAL REQUIREMENTS.............................5

11           3.   FAILURE TO FILE A VALID CLAIM AND ANSWER............6

12      B.   THE FACTS DEEMED ADMITTED BY THE FAILURE TO FILE A
13           CLAIM OR ANSWER ESTABLISH THAT THE DEFENDANT ASSETS
             CONSTITUTES NARCOTICS PROCEEDS..........................7

14  The government alleged the following facts in the complaint:.......7

15      C.   THE COMPLAINT'S ALLEGATIONS ESTABLISH THAT THE
16           DEFENDANT ASSETS ARE SUBJECT TO FORFEITURE..............12

     D.   THE PROPOSED DEFAULT JUDGMENT...........................12
17
    III. CONCLUSION....................................................13
18

19

20  DECLARATION OF Dan G. Boyle ......................................14

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2   DESCRIPTION                                                      PAGE

3   Cases

4   *Eitel v. McCool*,
        782 F.2d 1470 (9th Cir.1986).................................. 4-5
5
    *Geddes v. United Financial Group*,
6       559 F.2d 557 (9th Cir. 1977).................................. 4

7   *PepsiCo v. Triunfo-Mex, Inc.*,
        189 F.R.D. 431 (C.D. Cal. 1999)............................... 4
8
    *TeleVideo Systems, Inc. v. Heidenthal*,
9       826 F.2d 915 (9th Cir. 1987).................................. 4-5

10  *United States v. $50,200.00 in U.S. Currency*,
        76 F. Supp. 2d 1247 (D. Wy. 1999)............................. 6
11
    *United States v. $515,060.42 in U.S. Currency*,
12      152 F.3d 491 (6th Cir. 1998).................................. 6

13  *United States v. $148,840.00 in U.S. Currency*,
        521 F.3d 1268 (10th Cir. 2008)................................ 6
14
    *U.S. v. $11,918.00*,
15      2007 WL 3037307 (E.D. Cal., Oct. 17, 2007).................... 6

16  *United States v. 2007 Chrysler 300 Touring*,
        Slip Copy, 2011 WL 1119701.................................... 6
17
    *United States v. $104,674.00*,
18      17 F.3d 267 (8th Cir. 1994)................................... 6

19  *United States v. $291,828.00 In U.S. Currency*,
        536 F.3d 1234 (11th Cir. 2008)................................ 12
20
    *United States v. Approximately $194,752 in U.S. Currency*,
21      2011 WL 3652509, *3 (N.D. Cal.)............................... 5

22  *United States v. Currency $267,961.07*,
        916 F.2d 1104 (6th Cir. 1990)................................. 6-7
23
    *United States v. Currency, U.S. $42,500.00*,
24      283 F.3d 977 (9th Cir. 2002).................................. 12

25  *United States v. One 1985 Cadillac Seville*,
        866 F.2d 1142 (9th Cir. 1989)................................. 6
26
    *United States v. One 2001 Cadillac Deville Sedan*,
27      335 F. Supp. 2d 769 (E.D. Mich. 2004)......................... 6

28

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

Statutes

21 U.S.C. § 841,et seq.......................................... 5, 12

21 U.S.C. § 841(a)(1) ............................................ 12

21 U.S.C. § 846 .................................................. 12

21 U.S.C. § 881(a)(6)..................................... 1, 5, 12, 14

50 App. U.S.C. § 521 (Service Members Civ. Rel. Act, 2003).... 4-6, 17

19 C.F.R. § 162.6 .................................................8

Fed. Rules of Civ. Pro.

55(a) ............................................................ 4

55(b)(2)................................................. ii, 4, 6, 12

Local Rules of the Central Dist. of CA

5.2-1 ............................................................8

55 ............................................................... 6

55-1 ............................................................ii

Supp. Rules for Adm. or Maritime Claims & Asset Forfeiture Actions

C(6)..............................................................6

E(4)(b) ......................................................1, 14

G(4)(a)(iv)(C) ...............................................1, 14

G(5) ......................................................... 3, 16

*Fed. Practice & Procedure 3d § 2688*...............................13

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.  THE POTENTIAL CLAIMANT IS IN DEFAULT**

3

On December 21, 2021, the government filed a Verified Complaint

4 for Forfeiture as to the defendants, 2849.09758934 in Monero Digital

5 Currency, 0.12554563 in Bitcoin Digital Currency, and $56,467.00 in

6 U.S. Currency ("defendant currency"), pursuant to 21 U.S.C.

7 § 881(a)(6). See Declaration of Dan G. Boyle ("Boyle Decl.") at ¶ 2.

8

Process was executed upon the defendant currency by the

9 Department of Homeland Security – Homeland Security Investigations

10 ("HSI") in accordance with Rule E(4)(b) of the Supplemental Rules for

11 Admiralty or Maritime Claims and Asset Forfeiture Actions

12 ("Supplemental"), on March 16, 2022.  Attached to the Boyle Decl. as

13 Exhibit "A" is a true and correct copy of the executed process

14 receipt filed with the court.  *Id.* at ¶ 3.

15

Beginning on December 27, 2021, notice of Civil Forfeiture was

16 posted on an official government internet site (www.forfeiture.gov)

17 for at least 30 consecutive days, as required by Supplemental Rule

18 G(4)(a)(iv)(C).  Attached to the Boyle Decl. as Exhibit "B" is a true

19 and correct copy of the internet Proof of Publication.  *Id.* at ¶ 4.

20

### Notice to the Potential Claimant David Anthony Glenn

21

On December 22, 2021, the United States sent notice of the

22 Complaint to potential claimant David Anthony Glenn ("Glenn") at the

23 office of his attorney Michael Norris at 120 Fishermans Warf, Redondo

24 Beach, CA 90277 by certified mail.  *Id.* at ¶ 5.

25

The government did not receive the United States Postal Service

26 ("USPS") return receipt card for potential claimant Glenn care of his

27

28

attorney. However, the tracking number "7021 2720 0000 5382 7404" indicated that the notice is still in transit as of December 31, 2021.  Attached to the Boyle Decl. as Exhibit "C" is a true and correct copy of the claim letter and USPS tracking number confirmation.  *Id.* at ¶ 6.

On December 23, 2021, AUSA Dan Boyle sent an e-mail to Glenn's attorney, Michael Norris, stating that he represented the government in this civil forfeiture action recently filed against assets seized from Glenn's home.  Boyle attached a courtesy copy of the required notice of claim materials, which had also been mailed to Norris's office.  He requested that if Norris did not represent Glenn, Norris should let him know who to forward these materials to, or if he had in fact been authorized to speak on Glenn's behalf, to let me know a good time for a brief conversation about the matter. *Id.* at ¶ 7.

On February 9, 2022, Dan Boyle sent an e-mail to Michael Norris following up on the Glenn forfeiture matter. Boyle stated that he had approval to offer a settlement and attached a draft proposal.  He then stated that he understood that Norris may have still been seeking approval, but that the CAFRA deadlines were running and had already been extended once, and that his hope was to resolve this through a stipulation instead of going to default.  *Id.* at ¶ 8.

On March 11, 2022, Dan Boyle sent another e-mail to Michael Norris following up on the Glenn matter and requesting that he let Boyle know he had approval to represent Mr. Glenn's estate in the

matter, or if he knew of anyone else who may have been doing so. Boyle also mentioned that the extended claims deadline was approaching, at which point default proceedings would have to be initiated.  *Id.* at ¶ 9.

In accordance with Supplemental Rule G(5), the time for potential claimant David Anthony Glenn to file a claim in this action expired on January 26, 2022 and the time for filing an answer expired on February 16, 2022.  *Id.* at ¶ 10.

In accordance with Supplemental Rule G(5), all interested parties who did not receive direct notice were required to file a claim no later than 60 days after the first day of publication of an official internet government forfeiture site and an answer within 21 days thereafter. The first day of publication of this action on the government forfeiture site was December 27, 2021.  Accordingly, the time to file a claim and answer for all interested parties expired on February 25, 2022, and March 18 ,2022, respectively.  *Id.* at ¶ 11.

On April 11, 2022, a Default by Clerk was entered against Glenn and all other potential claimants.  Attached to the Boyle Declaration as Exhibit "D" is a true and correct copy of the Default by Clerk. *Id.* at ¶ 12.

Plaintiff has not received a filed claim or answer from potential claimant Glenn or any other potential claimant.  *Id.* at ¶ 13.

On information and belief, potential claimants Glenn is neither a minor nor an incompetent person. *Id.* at ¶ 14.

On information and belief, potential claimant Glenn does not serve in the U.S. military; accordingly, the Servicemembers Civil Relief Act of 2003 does not apply. *Id.* at ¶ 15.

On the date of filing, this Notice of Motion and Motion for Default Judgment was served by U.S. mail to potential claimant Glenn care of his attorney. *Id.* at ¶ 16.

## II.   ARGUMENT

### A.   THE STANDARD FOR ENTRY OF JUDGMENT BY DEFAULT

#### 1.   THE EITEL FACTORS

After the Clerk has entered default for failure to plead or otherwise defend an action, the court may enter judgment by default on the plaintiff's complaint. Fed. R. Civ. P. 55(a), 55(b)(2). Default judgments "are more often granted then denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) (Paez, J.). When exercising this discretion, courts typically consider the following factors:

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986) (the "*Eitel* factors"). Furthermore, when considering whether to grant default judgment, courts generally assume the factual allegations of the complaint to be true. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *TeleVideo Systems, Inc. v.*

4

*Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

The *Eitel* Factors in this case weigh heavily in support of default judgment.  The government would be highly prejudiced if default judgment was not granted, because "it would be forced to continue the litigation even though no party has filed an answer or a claim."  *United States v. Approximately $194,752 in U.S. Currency*, Slip Copy, 2011 WL 3652509, *3 (N.D. Cal.).  Additionally, as discussed in detail below, the government has established that the defendant currency constitutes or is traceable to proceeds of one or more violations of 21 U.S.C. § 841, *et seq*.  Accordingly, the forfeiture claim has substantive merit, and the complaint is sufficient to establish that all of the defendant currency is subject to forfeiture under 21 U.S.C. § 881(a)(6).  Furthermore, there is no dispute as to material facts, because no claimant has filed a valid claim or answer in this case and there is no evidence that the default is due to excusable neglect.  Finally, while policy considerations favor a decision on the merits, it is not possible to decide this case on the merits with respect to the defendant assets, since no potential claimant has come forward to contest the forfeiture of the defendant assets.  Therefore, default judgment is appropriate.  *Id*.

        2.   PROCEDURAL REQUIREMENTS

A party seeking default judgment must establish: (a) when and against what party the default was entered; (b) the identification of the pleading to which default was entered; (c) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) that the Servicemembers Civil Relief Act

1   (50 App. U.S.C. § 521) does not apply; and (e) that notice has been
2   served on the defaulting party, if required by Federal Rule of Civil
3   Procedure 55(b)(2).   L.R. 55.   As set forth above, these procedural
4   requirements have been met.

5              3.   FAILURE TO FILE A VALID CLAIM AND ANSWER

6        In order to contest a forfeiture action, a claimant must have
7   Article III and statutory standing.  *United States v. $148,840.00 in*
8   *U.S. Currency*, 521 F.3d 1268, 1273 & n. 3 (10th Cir. 2008); *United*
9   *States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir.
10  1998); *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142,
11  1148 (9th Cir. 1989).  A verified claim is a prerequisite to
12  establishing statutory standing.  *United States v. 2007 Chrysler 300*
13  *Touring*, Slip Copy, 2011 WL 1119701, (D.N.M.) (citing *U.S. v.*
14  *$11,918.00*, 2007 WL 3037307 (E.D. Cal., Oct. 17, 2007)).  The known
15  potential claimant, either directly, through his attorney, or both,
16  was specifically informed by the government of the requirement to
17  file a claim on or before January 26, 2022, and an answer within 21
18  days thereafter.  Having failed to have done so, the known potential
19  claimant has no statutory standing in this matter.  *United States v.*
20  *One 2001 Cadillac Deville Sedan*, 335 F. Supp. 2d 769, 772-3 (E.D.
21  Mich. 2004) (claimant who did not comply with Supplemental Rule C(6)
22  by filing a verified claim lacks statutory standing); *United States*
23  *v. $50,200.00 in U.S. Currency*, 76 F. Supp. 2d 1247, 1253 (D. Wy.
24  1999)(same); *United States v. $104,674.00*, 17 F.3d 267, 268 (8th Cir.
25  1994)(strict compliance with Supplemental Rule C(6) is required);
26  *United States v. Currency $267,961.07*, 916 F.2d 1104, 1108 (6th Cir.
27
28

1   1990) (same).  Therefore, the known potential claimant is properly in

2   default and the facts of the complaint are to be deemed admitted.

3       **B.    THE FACTS DEEMED ADMITTED BY THE FAILURE TO FILE A CLAIM OR
            ANSWER ESTABLISH THAT THE DEFENDANT ASSETS CONSTITUTES**

4       **NARCOTICS PROCEEDS**

5       The government alleged the following facts in the complaint:

6       Digital currency (also known as cryptocurrency or virtual

7   currency) is generally defined as an electronic-sourced unit of value

8   that can be used as a substitute for fiat currency (i.e., currency

9   created and regulated by a government). Digital currencies exhibit

10  properties similar to other currencies, but do not have a physical

11  form, existing entirely on the internet. Digital currency is not

12  issued by any government or bank (in contrast with "fiat" or

13  conventional currencies) and is instead generated and controlled

14  through computer software operating on a decentralized peer-to-peer

15  network. Digital currency is legal in the United States and accepted

16  for legitimate financial transactions. However, it is also often used

17  for conducting illegal transactions or for concealing or disguising

18  the true nature, source, location, ownership, or control of illegally

19  obtained criminal proceeds. Bitcoin is one of the most commonly used

20  and well-known digital currencies. "Monero" is another popular

21  digital currency. *See* Complaint at ¶ 8.

22      A wallet is identified by unique electronic addresses that

23  essentially stores the access code that allows an individual to

24  conduct transactions on the public ledger. To access a wallet on the

25  public ledger, an individual must use a public address (or "public

26  key") and a private address (or "private key"). The public address

27  can be analogized to an account number while the private address is

28

similar to a password used to access that account. Even though the public address of those engaging in digital currency transactions are recorded on the public ledger, the true identities of the individuals or entities behind the public address are not recorded. If a real individual or entity is linked to a public address, however, it may be possible to determine what transactions were conducted by that individual or entity. Therefore, digital transactions are often described as "pseudonymous," meaning they are partially anonymous. Most individuals are identified when they use a digital currency exchanger to make a transaction between digital currency and fiat, or through digital currency exchangers that voluntarily or through legal order, cooperate with law enforcement. *Id.* at ¶ 9.

In April 2021, United States Customs and Border Protection ("CBP") intercepted a parcel (the "Parcel") inbound from Mexico to the United States, addressed to Glenn at an address in Long Beach, California[1] (the "Long Beach Residence"). *Id.* at ¶ 10.

CBP conducts routine screenings of inbound packages from outside the United States at mail and shipping facilities all over the country. CBP is logistically unable to search all inbound parcels, and thus uses a variety of methods to selects parcels for examination.[2] *Id.* at ¶ 11.

Inside the Parcel, CBP agents discovered approximately 9.94 kilograms of suspected Dimethyltryptamine ("DMT"), a Schedule I controlled substance. *Id.* at ¶ 12.

_____

[1] Pursuant to Local Rule 5.2-1, all personal residence addresses have been omitted from this Complaint.

[2] Pursuant to 19 C.F.R. § 162.6, CBP agents do not need a warrant to search inbound international mail such as the Parcel.

1    Following discovery of the Parcel, law enforcement agents
2    including from HSI and the Long Beach Police Department ("LBPD")
3    conducted surveillance operations on Glenn and the Long Beach
4    Residence. *Id.* at ¶ 13.

5    Agents observed Glenn repeatedly travel to post offices in
6    different cities and mail a number of parcels. For example, on April
7    26, 2021, LBPD observed Glenn drop parcels at the USPS post office
8    located at 11721 183rd St., Artesia, California. On May 4, 2021, LBPD
9    also observed Glenn drop parcels at the USPS post office located at
10   9835 Flower St., Bellflower, California. *Id.* at ¶ 14.

11   On May 18, 2021, LBPD and HSI investigators established
12   surveillance on Glenn at the Long Beach Residence. Agents observed
13   Glenn leaving the Long Beach Residence carrying a large brown Amazon
14   cardboard box and placing the box into his vehicle. Glenn was
15   observed travelling from the Long Beach Residence and to a post
16   office located at 21350 S. Avalon Blvd., Carson, California. Glenn
17   dropped at least one parcel into one of the mail slots inside the
18   post office lobby. *Id.* at ¶ 15.

19   Agents of the United States Postal Inspection Service then
20   seized and searched a parcel Glenn had dropped at the Carson post
21   office on May 18, 2021 pursuant to a federal search warrant. Inside,
22   agents found two DVD cases which had visible bulges in the middle and
23   were secured by a piece of tape. Inside each of the DVD cases was a
24   black bag with a Ziploc style closure at the top. Inside of both
25   black bags was a white crystal-like substance which field-tested
26   positive for methamphetamine and weighed 118.2g total (including
27   packaging). *Id.* at ¶ 16.

28

On October 7, 2021, LBPD detective Michelle Mounts obtained a warrant from the Honorable Laura Laesecke, authorizing a search of the Long Beach Residence for evidence of narcotics trafficking. *Id.* at ¶ 17.

On October 12, 2021, investigators approached the Long Beach Residence and knocked on the front door, announcing themselves. Agents advised Glenn to open the door, which Glenn refused to do so until he saw the warrant. After several failed attempts to have Glenn open the door, investigators forced entry into the Long Beach Residence and secured Glenn. *Id.* at ¶ 18.

Inside the Long Beach Residence, investigating agents observed multiple containers of what appeared to be chemicals or precursor chemicals as well as machinery that appeared to be used to manufacture narcotics. Agents also found multiple packages and packaging materials consistent with distribution of suspected narcotics. *Id.* at ¶ 19.

Investigating agents discovered a false cabinet wall which hid another room in the Long Beach Residence. Inside this hidden room, agents discovered three trays containing psilocybin mushrooms, several hundred pounds of reddish powder resembling ground DMT precursors, a pill press machine, a pharmaceutical mixer and three bags of colored powdered pill binders. The pill press had blue powder residue and included dies with logos similar to those used to make ecstasy (MDMA) tablets. *Id.* at ¶ 20.

Inside the laundry room of the Long Beach Residence, agents discovered three 5-gallon cans labeled Naphtha, a 5-gallon bucket labeled sodium hydroxide and two large pressure cookers stained with

1  a reddish residue consistent with the DMT manufacturing process. *Id.*
2  at ¶ 21.

3      Also inside the Long Beach Residence, investigators noticed a
4  television screen located in the main living connected to a computer
5  tower. The screen was illuminated, and the computer tower was
6  running. Several tabs appeared on the screen including "Dread white
7  house," "yellowbrick," "Darknetlive," "KSWAP," "WHM," and "Invictus."
8  *Id.* at ¶ 22.

9      Each of these identified sites are known darknet[3] vendors and/or
10  marketplaces, except KSWAP, which is a Monero exchange market. *Id.* at
11  ¶ 23.

12     At the bottom of the television screen, investigators noticed an
13  icon for a cryptocurrency wallet app called "Exodus".  Upon viewing
14  the app screen, investigators noticed the wallet contained
15  approximately $800,000 USD in Monero Currency, and approximately
16  $7,000 USD in Bitcoin Currency (representing the Monero Currency and
17  Bitcoin Currency, respectively). *Id.* at ¶ 24.

18     At the base of the television stand was a "ledger"
19  cryptocurrency hardware wallet that was not attached to any device.
20  Investigating agents then seized the ledger device and executed a
21  transfer of both the Monero Currency and the Bitcoin Currency from
22  the "Exodus" wallet open on Glenn's computer to an HSI-issued cold
23  computer and HSI controlled cryptocurrency wallet. *Id.* at ¶ 25.

24     After the discovery of the digital currency, investigators found
25  U.S. Currency in several locations in the Long Beach Residence,

---

26     [3] The "darkweb" or "dark net" refers to the part of the World
27  Wide Web that is only accessible by means of special software,
   allowing users and website operators to remain somewhat more
28  anonymous.

11

including a shoebox in the laundry room, on top of the pony wall in the living room, and in a false compartment in the pony wall. The total amount discovered was $56,467.00 in U.S. Currency. *Id.* at ¶ 26.

### C.   THE COMPLAINT'S ALLEGATIONS ESTABLISH THAT THE DEFENDANT ASSETS ARE SUBJECT TO FORFEITURE

Plaintiff alleges that the defendant assets are or are derived from proceeds traceable, to violations of 21 U.S.C. § 841(a)(1) (distribution and possession with the intent to distribute controlled substances), and 21 U.S.C. § 846 (conspiracy to distribute controlled substances).  The defendant assets are therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

Here, the facts alleged in the complaint establish that the defendant assets are or are derived from proceeds.  In making that showing, the government may rely upon both circumstantial and direct evidence.  *United States v. $291,828.00 In U.S. Currency*, 536 F.3d 1234, 1237 (11th Cir. 2008); *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 980 (9th Cir. 2002) (forfeiture determination is based on the aggregate of the facts including circumstantial evidence).

Law enforcement officers from HSI and LBPD believed that Glenn was transporting currency that was for the purchase of, or were proceeds of controlled substances.

### D.   THE PROPOSED DEFAULT JUDGMENT

Because the facts admitted by the defaulting parties establish that the defendant assets are subject to forfeiture, judgment by default against the interests of potential claimant Glenn and all potential claimants should be entered pursuant to Federal Rule of Civil Procedure 55(b)(2).

12

1    Once a court has decided that judgment should be entered by

2  default, the court must determine the character of the recovery to

3  grant the plaintiff.  10A Wright, Miller & Kane, *Federal Practice and*

4  *Procedure 3d § 2688*.  The proposed default judgment grants the very

5  relief sought in the complaint (forfeiture of the defendant assets to

6  the United States of America for disposition according to law).

7  **III. CONCLUSION**

8    For the foregoing reasons, the government respectfully requests

9  that this Court grant this motion for a default judgment.

10

11  DATED: May 12, 2022          Respectfully submitted,

12

13                              TRACY L. WILKISON
                                Acting United States Attorney
                                SCOTT M. GARRINGER
14                              Assistant United States Attorney
                                Chief, Criminal Division
15                              JONATHAN GALATZAN
16                              Assistant United States Attorney
                                Chief, Asset Forfeiture Section

17                               */s/ Dan G. Boyle*
18                              DAN G. BOYLE
                                Assistant United States Attorney
19

20                              Attorneys for Plaintiff
                                UNITED STATES OF AMERICA
21

22

23

24

25

26

27

28

                                   13

<u>DECLARATION OF DAN G. BOYLE</u>

I, DAN G. BOYLE, hereby declare and state as follows:

I have personal knowledge of the following facts and, if called as a witness, would testify thereto under oath.

1.   I am an Assistant United States Attorney in the Central District of California.  In my capacity as an Assistant United States Attorney, I am chiefly responsible for the representation of the government's interest in this action, entitled *U.S. v. 2849.09758934 in Monero Digital Currency, 0.12554563 in Bitcoin Digital Currency, and $56,467.00 in U.S. Currency*.  After reviewing Plaintiff's file and records in this case, I am informed and believe that:

2.   On December 21, 2021, the government filed a Verified Complaint for Forfeiture as to the defendants, 2849.09758934 in Monero Digital Currency, 0.12554563 in Bitcoin Digital Currency, and $56,467.00 in U.S. Currency, pursuant to 21 U.S.C. § 881(a)(6).

3.   Process was served upon the defendant currency by the Department of Homeland Security – Homeland Security Investigations ("HSI") in accordance with Supplemental Rule E(4)(b) on or about March 16, 2022.  Attached hereto as Exhibit "A" is a true and correct copy of the Process and Return form.

4.   Beginning on December 27, 2021, notice of Civil Forfeiture was posted on an official government internet site (www.forfeiture.gov) for at least 30 consecutive days, as required by Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  Attached hereto as Exhibit "B" is a true and correct copy of the internet Proof of Publication.

Notice to the Potential Claimant David Anthony Glenn

5.   On December 22, 2021 the United States sent notice of the Complaint to potential claimant David Anthony Glenn ("Glenn") at the office of his attorney Michael Norris at 120 Fishermans Warf, Redondo Beach, CA 90277, by certified mail.

6.   The government did not receive the United States Postal Service ("USPS") return receipt card for potential claimant Glenn care of his attorney.  However the tracking number "7021 2720 0000 5382 7404" indicated that the notice is still in transit as of December 31, 2021.  Attached hereto as Exhibit "C" is a true and correct copy of the claim letter and USPS tracking number confirmation.

7.   On December 23, 2021, I sent an e-mail to Glenn's attorney, Michael Norris, stating that I represented the government in this civil forfeiture action recently filed against assets seized from Glenn's home.  I attached a courtesy copy of the required notice of claim materials, which had also been mailed to Norris's office.  I requested that if Norris did not represent Glenn, Norris should let me know who to forward these materials to, or if he had in fact been authorized to speak on Glenn's behalf, to let me know a good time for a brief conversation about the matter.

8.   On February 9, 2022, I sent an e-mail to Michael Norris following up on the Glenn forfeiture matter. I stated that I had approval to offer a settlement and attached a draft proposal.  I then stated that I understood that Norris may have still been seeking approval, but that the CAFRA deadlines were running and had already

15

been extended once, and that my hope was to resolve this through a stipulation instead of going to default.

9.   On March 11, 2022, I sent another e-mail to Norris following up on the Glenn matter and requesting that he let me know he had approval to represent Mr. Glenn's estate in the matter, or if he knew of anyone else who may have been doing so. I also mentioned that we were approaching the extended claims deadline, at which point we would have to initiate default proceedings.

10.   In accordance Supplemental Rule G(5), the time for potential claimant Glenn to file a claim in this action expired on January 26, 2022, and the time for filing an answer expired on February 16, 2022.

11.   In accordance with Supplemental Rule G(5), all interested parties who did not receive direct notice were required to file a claim no later than 60 days after the first day of publication of an official internet government forfeiture site and an answer within 21 days thereafter.  The first day of publication of this action on the government forfeiture site was December 27, 2021.  Accordingly, the time to file a claim and answer for all interested parties expired on February 25, 2022 and March 18, 2022, respectively.

12.   On April 11, 2022, a Default by Clerk was entered against Glenn and all other potential claimants.

13.   Plaintiff has not received a filed claim or answer from potential claimant Glenn or any other potential claimant.

14.   On information and belief, potential claimant Glenn is neither a minor nor incompetent person.

1       15.   On information and belief, potential claimant Glenn does

2   not serve in the U.S. military; accordingly, the Servicemembers Civil

3   Relief Act of 2003 does not apply.

4       16.   On the date of filing, this Notice of Motion and Motion for

5   Default Judgment was served by U.S. mail to potential claimant Glenn

6   at his attorney's office address.

7       I declare under penalty of perjury, under the laws of the United

8   States of America, that to the best of my knowledge, the foregoing is

9   true and correct.

10       Executed on May 12, 2022, in Los Angeles, California.

11

12                                              */s/ Dan G. Boyle*

                                          Dan G. Boyle

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28